William H. BROOKINS, Plaintiff–Appellant,

v.

Darrell A. KOLB, Kenneth Sondalle, and Glen Link, Defendants–Appellees.

No. 91–3709.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1992.

Decided March 31, 1993.

Rehearing Denied May 11, 1993.

309

Michael J. Collard, Michael J. Lund (argued), Frisch Dudek, Ltd., Milwaukee, WI, for plaintiff-appellant.

Peter C. Anderson, Asst. Atty. Gen. (argued), James E. Doyle, Atty. Gen., Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for defendants-appellees.

Before COFFEY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

William H. Brookins, a prisoner at the Waupun Correctional Institution in Wisconsin, was the co-chairman of an approved prisoners' committee, which gave legal assistance to other inmates. In a letter written to the director of prisons, Brookins suggested that polygraph tests be administered in an investigation of another prisoner. He also stated that the committee would pay for the tests. Prison officials concluded he violated prison regulations and transferred him to another prison. Brookins sued, claiming retaliation. The district court determined that no constitutional rights were violated. Brookins appeals and we affirm.

## I. Background

### A. Facts

Brookins was an inmate in the Waupun Correctional Institution (Waupun), a maximum security prison in Wisconsin. He was a member and co-chairman of the Waupun Paralegal Base Committee (PBC), a prison-approved activity group,[1] that assisted inmates with their legal research and with preparing their legal documents. Ben Sanders, another inmate, sought legal assistance from Brookins. Sanders had received two conduct reports for battery, attempted battery, disobeying orders, and disruptive conduct against members of the security staff. On behalf of Sanders, Brookins, in his official capacity as co-chairman of the PBC, wrote a letter on PBC letterhead to Phil Kingston, the Director of the Wisconsin Bureau of Adult Institutions. Before sending the letter, Brookins neither sought nor received the required approval of Kathy Dayton, a state employee who served as the PBC's Group Advisor. In the letter, Brookins requested that before the disciplinary hearing took place all parties involved in the alleged incident be given polygraph tests to help determine whether the allegations were true. Brookins also stated in the letter that the PBC was willing to pay the cost of the testing from its own funds. Brookins sent copies to various prison officials, including Darrell Kolb, the Acting Superintendent of Waupun, and Glen Link, the Group/Public Services Coordinator at Waupun.

After receiving the letter, Kolb determined that Brookins had violated two prison regulations. The first regulation provided for the Group Advisor to approve or disapprove all committee correspondence before sending the correspondence to the Group Coordinator. The second regulation provided that the Group Advisor co-sign all requests for the disbursement of committee funds and that the Group Coordinator then approve the request for funds. Because of the violations, Kolb instructed Link to inform Brookins that he was being removed both as a member and as the co-chairman of the PBC. Link sent Brookins a memorandum informing him of Kolb's decision.

Thereafter, Kenneth Sondalle, a Treatment Director at Waupun, sent a memorandum to Brookins's social worker. Sondalle's memorandum was fairly complimentary of Brookins, noting the good adjustment he had made to prison life. The memorandum, though, exhibited Sondalle's concern that Brookins may eventually find

---

1. Wis.Admin.Code § HSS 309.365 (June 1987).

himself in disciplinary trouble because he had "developed an overinflated opinion of his role as a Paralegal Base Committee member and his inmate status" and had "recently overstepped his role avoiding set process for authorizing committee funds and group correspondence." Sondalle pointed out to the social worker "that most leaders of the Paralegal [B]ase Committee are currently experiencing institution disciplinary concerns and for a variety of serious reasons." Sondalle thought Brookins should be transferred to another prison before he found himself in disciplinary problems, and, therefore, he recommended that the Program Review Committee give Brookins an early review. The Program Review Committee met and recommended transfer. Brookins was sent to the Columbia Correctional Institution, another maximum security prison in Wisconsin. The PBC was later disbanded.

## B. District Court Proceedings

Brookins filed a pro se civil rights action against the prison officials pursuant to 42 U.S.C. § 1983. The thrust of his complaint was that the prison officials had retaliated against him by removing him from the PBC and by transferring him to another prison, because he had attempted to give Sanders legal assistance and because he had written the letter to Kingston on Sanders's behalf. Brookins requested injunctive relief, a declaratory judgment, monetary damages, and punitive damages. Brookins moved for leave to proceed as a pauper. The district court granted the leave on the single ground that Brookins had arguably stated a claim that the prison officials retaliated against him for providing legal assistance to other inmates.

The prison officials moved for summary judgment, with supporting affidavits. Given the reason the district court had permitted Brookins to proceed as a pauper, the prison officials treated the lawsuit as a claim that they had retaliated against Brookins solely for providing legal assistance to Sanders. Put another way, the officials viewed the lawsuit as challenging their alleged infringement of Brookins's right to associate with Sanders within the realm of the PBC. In response to the prison officials' motion for summary judgment, Brookins did not submit any evidence and chose to rely on his pleadings. He argued, in part, that the prison officials wrongly analyzed the lawsuit as one involving associational rights instead of one involving the right to free speech and the right to petition the government for the redress of grievances.

A magistrate judge reviewed the prison officials' motion for summary judgment and issued a report and recommendation. The magistrate judge found that although the district court had granted Brookins pauper status on his associational claim, the district court did not dismiss Brookins's other claim that the prison officials had retaliated against him for writing the letter. Focusing only on this latter claim, the magistrate judge determined that the lawsuit involved free speech rights. He applied *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and placed the burden on the prison officials to show that the regulations were generally necessary to advance legitimate governmental interests. The magistrate judge found that the officials had failed to meet their burden. The magistrate judge also ruled that the regulations on their face failed to impose an obligation on Brookins to get prior approval before either sending the letter or offering to pay for the polygraph tests. Accordingly, the magistrate judge recommended that the district court deny the prison officials' motion for summary judgment.

The prison officials objected to the report and recommendation, and after a de novo review, the district court declined to adopt the magistrate judge's conclusions. Aware of the parties' conflicting interpretations of the lawsuit, the district court ruled that if Brookins was alleging a violation of his right to associate with Sanders in giving him legal assistance, then the burden of proof did not rest with the prison officials, as the magistrate judge had held, but with Brookins. Based on *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629

(1977), the district court placed the burden on Brookins to show that the regulations were an exaggerated response to legitimate penological objectives. The court found that Brookins, who had relied only on his pleadings, had not satisfied this burden of proof. The court also considered Brookins's contention that the prison officials had retaliated against him for writing to Kingston. The court found no implication of free speech rights and determined that the record evidence showed that the prison officials removed Brookins from the PBC and transferred him to the Columbia Correctional Institution only because he had failed to obey the regulations governing the operation of the PBC.

## II. Analysis

We have jurisdiction, 28 U.S.C. § 1291, to consider the three points Brookins raises on appeal: (1) that the district court erred in considering the case as one dealing with the right to associate rather than one involving the right to free speech and the right to petition the government for the redress of grievances; (2) that the district court erred in ruling as a matter of law that he violated the prison regulations; and (3) that the prison officials are not entitled to qualified immunity, an alternative argument the prison officials raise on appeal to support the affirmance of the district court.

### A. Standard of Review

■ We review de novo a district court's order granting summary judgment, viewing the facts and drawing all reasonable inferences therefrom in favor of the nonmoving party. *Prince v. Zazove*, 959 F.2d 1395, 1398 (7th Cir.1992). Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The movant has the burden of showing that there is no genuine issue of fact, but ... [under Rule 56(e), the nonmoving party] must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. at 2514. "[T]here can be 'no genuine issue as to any material fact' " where the party who bears the burden of proof fails to establish an essential element in its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 56(c)).

### B. Associational Rights or Free Speech Rights?

In Brookins's first point on appeal, he argues that the district court erroneously viewed his lawsuit as alleging that the prison officials had violated his right to associate, rather than his right to free speech and right to petition the government for the redress of grievances. Despite this argument, Brookins's attorney conceded at oral argument that the First Amendment rights Brookins possessed in his capacity as the co-chairman of the PBC were the associational rights to act on behalf of the other prisoners. This concession comports with the district court's ruling, a ruling with which we agree.

■ As a prisoner, Brookins's constitutional rights are limited and, in some cases, completely eliminated. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). Brookins "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804. Likewise, "[t]he curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities, chief among which is internal security." *Hudson v.*

*Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984) (citations omitted); *accord O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). "Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125–26, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977). "The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." *Id.* at 126, 97 S.Ct. at 2538.

The State of Wisconsin gave Brookins and the other prisoners the limited right to form and take part in the PBC. The letter Brookins wrote, as co-chairman of the PBC and on PBC stationery, represents the extension of his right to associate with Sanders within the scope of the limited right the State had given the prisoners to form and operate the PBC. Brookins was acting within his official capacity as co-chairman when he drafted and sent the letter, and, therefore, he was under the obligation to follow the regulations governing committee correspondence. His failure to do so caused the prison officials' reaction.

■ Because the First Amendment rights Brookins had in his capacity as co-chairman were the associational rights to act on behalf of Sanders, the district court correctly determined that Brookins had to present substantial record evidence at the summary judgment stage to demonstrate that the prison officials—in reacting to his letter—exaggerated their response to preserving the legitimate penological objectives of the prison environment. *Id.* at 128, 132, 97 S.Ct. at 2539, 2541. Brookins did not meet his burden and instead relied on his pleadings. In light of Brookins's failure to carry his burden on an issue he would have had to prove at trial, the district court properly entered judgment as a

matter of law in favor of the prison officials. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ We also agree with the district court that this lawsuit involves no implications of free speech rights. Although Brookins argues that the prison officials retaliated against him for exercising his right to free speech, he has not demonstrated that the speech contained in his letter rose to the level of protected speech. Brookins did not write the letter to inform the prison officials about a prison issue that was a matter of public interest or concern. The letter only dealt with a matter personal to Sanders. The letter requested the use of lie detector tests to help disprove the allegations against Sanders. The letter did not highlight a problem with the way the prison handled its disciplinary proceedings, or urge a change of any prison policy precluding the use of lie detector tests in disciplinary proceedings against inmates. Thus, we do not find the type of speech contained in the letter to be protected by the First Amendment. *See, e.g., R.A.V. v. City of St. Paul*, — U.S. —, —, 112 S.Ct. 2538, 2563, 120 L.Ed.2d 305 (1992) (Stevens, J., concurring).

■ Moreover, even though Brookins contends that the letter represented an exercise of his right to petition the government for the redress of grievances on behalf of Sanders, the content of the letter fails to demonstrate that Brookins was exercising such a right. He was not airing any grievances with the prison officials in hopes of receiving satisfaction for an injury. *See* U.S. Const. amend. I; *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam); *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). He was merely suggesting that lie detector tests be given to help determine whether the allegations were true before Sanders had his disciplinary hearing, which by its own definition is a proceeding designed to uncover the truth of the allegations presented before it.

In sum, because this case involves Brookins's right to associate with Sanders and does not implicate any free speech or petition rights, Brookins had the burden of proof at the summary judgment stage to show that the prison officials exaggerated their response to preserving the legitimate penological objectives of the prison. *Jones*, 433 U.S. at 128, 132, 97 S.Ct. at 2539, 2541. Brookins failed to satisfy his burden, and the district court properly ruled in favor of the prison officials. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

*C. Violation of Prison Regulations?*

In Brookins's second point on appeal, he contends the district court erred in finding that he had violated prison regulations. The first regulation that applied to Brookins provides in relevant part:

GROUP ADVISORS

E.  As the official communications link between Waupun Administration and the groups and committees, the advisor will:

1.  Submit copies of all group and committee's correspondence to the Group Coordinator.

2.  Submit to the Group Coordinator for appropriate action and approval, all proposals for new activities, invitations to outside speakers, requests for purchase or disbursement, etc.

. . . .

4.  If an advisor has questions on how to handle a proposal or correspondence memo he/she should contact the Group Coordinator for clarification.

5.  Once [the] advisor has received a memo or proposal from the group or committee he/she should research it prior to forwarding to the Group Coordinator.

6.  If the advisor does not agree with correspondence or a proposal from the group or committee he/she should not sign it. Attached is a brief memo for the Group Coordinator explaining reason(s) for objection to the proposal or memo.

. . . .

D.  Group Proposals

1.  All group and committee proposals will be submitted to the Group Coordinator after the advisor has completed his/her review and research of the proposal.

. . . .

5.  Proposals which impact on inmates or staff outside of the group will be routinely forwarded to Waupun Advisory Committee for review and recommendations.

6.  All Pr[o]posals must have the written approval of the Group Coordinator or the Administrative Team before the proposal can be implemented.

Waupun, *Policies & Procedures Manual* § HSS 309.41.

■  Brookins argues that the regulation did not require him to submit his letter to the Group Advisor before sending it. This contention is contrary to the clear meaning of the regulation. The regulation sets out a multi-step process for group or committee correspondence. A prisoner group or committee must first submit its letter to the Group Advisor. The Group Advisor then researches the content of the letter before forwarding it to the Group Coordinator. If the Group Advisor (in this case Kathy Dayton) agrees with the correspondence she co-signs it; otherwise, she attaches a brief explanation to the letter outlining why she disagrees and why she has declined to co-sign the letter. The Group Advisor then sends the letter and any comments to the Group Coordinator.

Brookins totally bypassed this process. He did not first submit the letter to Kathy Dayton, the Group Advisor, for review. Instead, he sent it directly to the director of prisons with copies to other prison officials, including Link, the Group Coordinator. As the regulation clearly states, the Group Coordinator should not receive such correspondence until the Group Advisor has completed the initial review.

■  The second regulation that applied to Brookins states in part:

E.  Group and Committee Funds

2.  All financial activity, dues collection, purchases and disbursements will

be monitored and approved by the advisor.

3. All dues, collections and other money transactions must be via approved transmittal methods and occur at approved and specified time and place. Credit will not be allowed.

4. All purchase requests must be co-signed by the group leader and advisor, approved by the Group Coordinator and processed by Waupun Business Office.

5. All requests for disbursement from group/committee funds must be co-signed by the group leader or committee chairperson and advisor, approved by the Group Coordinator and accompanied by an invoice of billing from the vendor or service provider. No disbursement will be made unless the purchase (whether product or service) has been approved ... and verification of purchase or service delivery is provided by the advisor.

*Id.* § HSS 309.41. Because Brookins lacked the authority to disburse PBC funds, his offer to pay for the polygraph testing was nothing more than a request to disburse funds for that purpose. Before he could make the request, however, he needed the Group Advisor to co-sign the request and the Group Coordinator to approve the request. He did neither and, therefore, violated this regulation.

■ Despite Brookins's contrary protestations, the prison officials did not retaliate against him because of what he wrote in the letter to Kingston. He was disciplined for abusing the rules governing the process in which the PBC operated. Although he claims retaliation, Brookins has not shown that the content of his letter was a substantial or motivating factor in the prison officials' decision to remove him from the PBC and transfer him to the Columbia Correctional Institution. *See Ponchik v. Bogan,* 929 F.2d 419, 420 (8th Cir.1991); *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987); *McDonald v. Hall,* 610 F.2d 16, 18–19 (1st Cir.1979); *cf. Mount Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 283–84, 287, 97 S.Ct. 568, 574–75, 576, 50

L.Ed.2d 471 (1977). No evidence suggests that the prison officials acted against Brookins because he had requested the use of lie detector tests. The regulations are content neutral on their face, regulating the manner in which an inmate activity group operates and not the content of what an activity group may write; for example, the regulations provide for the Group Advisor to forward committee correspondence to the Group Coordinator whether the Advisor agrees with it or not. *See Pell,* 417 U.S. at 828, 94 S.Ct. at 2807. Consequently, the evidence supports the conclusion of the district court that the prison officials removed Brookins from the PBC and transferred him to the Columbia Correctional Institution because he ignored the established prison policy governing the sending of committee and group correspondence. In short, the prison officials did not retaliate against Brookins for exercising his constitutional rights. *Ponchik,* 929 F.2d at 420; *Caldwell v. Miller,* 790 F.2d 589, 603 n. 19 (7th Cir.1986); *Shango v. Jurich,* 681 F.2d 1091, 1098 n. 13 (7th Cir.1982).

As Sondalle noted in his memorandum to Brookins's social worker, although Brookins had made good adjustments to prison life, he was heading for disciplinary problems because of his overinflated sense of importance as the co-chairman of the PBC. In addition, Sondalle pointed out that most of the other PBC leaders were experiencing disciplinary measures because of their conduct. As a result, we have no difficulty in concluding that the action the prison officials took with regard to Brookins was for his benefit as well as for the benefit of Waupun. *See* Wis.Admin.Code § HSS 309.365(7)(a)(2), (5) (June 1987) ("A superintendent may withdraw approval of an activity group if he or she has reasonable grounds to believe that ... [t]he group poses a threat to the order and security of the institution [or] [t]he group has violated a statute, administrative rule or institutional policy or procedure"); Waupun, *Policies & Procedures Manual* § HSS 309.41 ("The institution may limit, suspend or terminate group operations at any time for failure to abide by established guidelines, apparent abandonment of purpose (goals or objec-

tives) or perceived threat to the security and order of the institution"); *see also Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979) (holding that courts give prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"); *Williams v. Faulkner,* 837 F.2d 304, 309 (7th Cir.1988) ("Absent some statutory or regulatory provision that clearly limits prison officials in the exercise of their discretion, a prisoner may be transferred for any reason, or for no reason at all"), *aff'd sub nom. Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### D. Entitlement to Qualified Immunity?

In Brookins's third and final point on appeal, he maintains that the prison officials are not entitled to qualified immunity, an argument the prison officials raise in their Answer Brief as an alternative basis on which we may affirm the district court. Because we have determined from our de novo review that the district court properly granted the prison officials' motion for summary judgment, we decline to consider the qualified immunity question.

### E. Due Process Violation?

▮ In response to this court's questioning at oral argument, Brookins's attorney stated that Brookins had waived any claim to a due process violation because he had failed to raise the issue below or on appeal. After oral argument, Brookins's attorney filed a letter with this court in which he retracted his concession. In the letter, he points to a paragraph in Brookins's pro se complaint which raises a due process claim. Brookins alleged: "Defendant Kolb did not give plaintiff any due process hearing or reasons for 'administratively remov[ing]' plaintiff from the state created liberty interest of being Co-chairman of the WCI–Paralegal Base Committee (PBC)." Nevertheless, we conclude that Brookins has waived any claim to a due process violation. After raising the matter in his complaint, he let it lapse. He failed to argue it again

during the proceedings leading up to the entry of final judgment, and he did not argue it in a post-final judgment motion or on appeal. *See Hartz v. Friedman,* 919 F.2d 469, 475 (7th Cir.1990) (noting that an appellate court generally considers only the arguments an appellant makes, not arguments he could have made).

Furthermore, we do not find this matter one of those rare instances where justice demands flexibility, causing us to examine a question the district court did not have the first opportunity to address. *Hudak v. Jepsen of Ill.,* 982 F.2d 249, 251 & n. 1 (7th Cir.1992); *Textile Banking Co. v. Rentschler,* 657 F.2d 844, 853 (7th Cir.1981). From the record before us, we find no evidence that Brookins had a state-created liberty interest in his position as co-chairman, warranting a due process proceeding before he was removed from the PBC and transferred to the Columbia Correctional Institution. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 462–63, 109 S.Ct. 1904, 1908, 1909–10, 104 L.Ed.2d 506 (1989); *Wolff,* 418 U.S. at 556–58, 94 S.Ct. at 2974–76; *Castaneda v. Henman,* 914 F.2d 981, 983 (7th Cir.1990), *cert. denied,* 498 U.S. 1124, 111 S.Ct. 1085, 112 L.Ed.2d 1190 (1991); *Caldwell,* 790 F.2d at 603.

### III. Conclusion

The district court properly viewed this lawsuit as involving associational rights, rather than free speech and petition rights. The district court also properly concluded that the prison officials acted against Brookins because he had violated the prison regulations and not because he had exercised any constitutional rights. Because the district court did not err in its rulings, we need not consider the question of qualified immunity. Brookins, moreover, has waived any claim to a due process violation. The district court is

AFFIRMED.