**GERALD R. TURNER & ASSOCIATES, S.C., Plaintiff–Appellant,**

v.

**Michael MORIARTY, Moriarty & Madigan, Donna Szczesny, et al., Defendants–Appellees.**

No. 92–4123.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1993.

Decided Oct. 14, 1993 *.

Opinion May 20, 1994.

---

* This appeal was originally decided by unpublished order of October 14, 1993. See Circuit Rule 53. The court has subsequently decided to issue the decision as an opinion.

(William A. Jennaro, Thomas J. Lonzo, on brief), Cook & Franke, Milwaukee, WI, Rodney D. DeKruif, Racine, WI, Robert J. Bauman (argued), Law Office of Robert J. Bauman, Milwaukee, WI, for plaintiff-appellant.

Michael J. Jassak (argued), Habush, Habush & Davis, Racine, WI, for defendants-appellees Michael Moriarty, Moriarty & Madigan.

Mark Darnieder, Niemann, West & Darnieder, Milwaukee, WI, for defendant-appellee Donna Szczesny.

Arthur J. Vlasak (argued), Michele M. Ford, Vlasak, Rosenbaum, Weede & Britton, Joel P. Borowiec, American Family Ins., Milwaukee, WI, for defendant-appellee Hartford Ins. Co.

James E. Bartzen (argued), Boardman, Suhr, Curry & Field, Madison, WI, Arthur J. Vlasak, Michele M. Ford, Vlasak, Rosenbaum, Weede & Britton, Joel P. Borowiec, American Family Ins., Milwaukee, WI, for defendant-appellee Ins. Corp. of America.

Before CUDAHY, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Gerald R. Turner, a Wisconsin attorney, claims he is due roughly $100,000.00 in attorney's fees from a Texas lawsuit in which he and Michael A. Moriarty, a Texas attorney, served as co-counsel. Their client was Donna Szczesny, and with her approval, the two attorneys had agreed to split any recovery evenly. After Moriarty settled the case with the Hartford Casualty Insurance Company ("Hartford") and the Insurance Corporation of America ("ICA") for $1,500,000.00, Moriarty sent Turner a check for approximately $198,000.00 in full payment of his fees.[1] Turner protested the amount to Moriarty, but cashed the check. Turner, through his law firm, Gerald R. Turner & Associates, S.C., sued Moriarty, Hartford, and ICA for the remainder of his fee.[2] The district court granted summary judgment in favor of the three defendants. Turner appealed. We consider whether Turner's cashing of the check constituted accord and satisfaction under Wisconsin law and whether Hartford and ICA received adequate notice of any lien or assignment Turner had to the settlement amount. We affirm the district court's ruling regarding Hartford and ICA, but reverse its ruling with respect to Moriarty.

## I. Background

In 1985, Szczesny contacted Turner, a Wisconsin attorney, to create a guardianship for her husband, who was in a permanent vegetative state as a result of the medical treatment he had received in Texas. Turner advised Szczesny that she had a viable medical malpractice claim, and she approved the filing of a lawsuit. In a written agreement, Szczesny agreed to give Turner a forty-percent contingency fee, and she gave Turner a lien for that percentage of the recovery.

Because Szczesny's husband was injured in Texas and all defendants resided in Texas, Turner contacted Moriarty, a Texas attorney, to assist him with the lawsuit. In a letter dated December 3, 1985, from Moriarty to Turner, Moriarty agreed to split evenly with

---

1. Hartford and ICA insured the defendants in the Texas state-court action.

2. Along with suing Moriarty individually, Turner sued Moriarty's law firm, Moriarty and Madigan, and Donna Szczesny. We will refer to these defendants collectively as Moriarty.

Turner the contingent attorney's fee on any recovery. Szczesny executed a new contract of representation and power of attorney, retained both Turner and Moriarty as her attorneys, agreed to pay a forty-percent contingency fee to the two attorneys, and assigned that percentage of the recovery to them.

The lawsuit proceeded in a Texas state court. For whatever reason, Moriarty canceled his appearance at the deposition of Szczesny's expert witness taken in Milwaukee, Wisconsin. Turner appeared in Moriarty's place. Counsel for Hartford and ICA were also at the deposition. After the deposition, Turner entered into negotiations for a settlement with Hartford and ICA. ICA offered to settle the lawsuit with Turner for $750,000.00, which was not accepted.

In August 1986, Turner sent a letter, approved by Szczesny, to Moriarty discharging him from the lawsuit. Turner claimed Moriarty had neglected the case, for example, by missing the long-scheduled deposition of an expert witness. As a result of the discharge letter, Moriarty flew to Wisconsin and spoke with Szczesny. He convinced her that he should remain on the case. Szczesny, thereafter, sent a letter to Turner in September 1986, informing him that she wanted Moriarty reinstated. She wanted Moriarty to become the "lead counsel" and for any settlement negotiations to be coordinated through his Texas office.

After being reinstated, Moriarty claims he did most of the work in the lawsuit. Turner contends that he also did a great deal of work. In mid–1988, Moriarty negotiated a settlement with Hartford and ICA in the Szczesny case for $1,500,000.00.

In June 1988, the Texas state court held a hearing on the settlement. During the evidentiary portion of the hearing, Szczesny agreed that Moriarty had done about ninety percent of the work in the case. She also agreed to Moriarty's proposal that Turner receive only one-third of the $600,000.00 contingency fee. Turner did not participate in the hearing because he had no notice of it. The Texas court approved the settlement amount and the forty-percent contingency

fee, but it passed no judgment on how Moriarty and Turner should divide their fees.

Turner learned about the settlement after calling the Texas court for a status report on the lawsuit. He was unable to reach Moriarty, but he did speak with Szczesny. According to Turner, she denied having been in Texas or having participated in any settlement. Julie Flessas, an attorney in Turner's office, later spoke with Szczesny. According to Flessas, Szczesny said Turner was entitled to the agreed-upon fifty-percent fee split and that no dispute existed over the fee amount.

On July 6, 1988, Moriarty sent Turner a letter informing him of the $1,500,000.00 settlement. The letter further stated in relevant part:

> During the evidentiary portion of the hearing, Mrs. Szczesny approved the payment to you of ⅓ referral fee and the Court approved the settlement and the payment of this referral fee. Accordingly, attached is our firm check for ⅓ of the gross attorney fee recovered in the case.
>
> Your negotiation of the enclosed check, as evidenced on the check, will be full and final settlement and release for any attorneys fees, costs or expenses arising out of the cause of action....
>
> As you know, aside from the client and Court approval, one of the constraints on the payment of attorneys fees is that the referral payment be commensurate with services performed by the referring attorney. This standard exists in both the American Bar Association Code of Professional Responsibility and the Texas Code of Professional Responsibility. Although the referral fee in this case might be considered excessive in light of your portion of services performed in the litigation in question, we will seek to justify payment of ⅓ referral in the context of this case if the attached check is negotiated accordingly.

Up until he received the July 1988 letter, Turner had never been apprised that there was any underlying doubt regarding the fifty-fifty fee split agreement he had with Moriarty.

On the front side of the check, which was in the amount of $198,333.33, was written:

"Full and Final Settlement and Release of any claim to attorney fees, costs and expenses arising out of [the Szczesny litigation]." On the back side of the check was written: "Negotiating this Instrument is acknowledgement of Full and Final Settlement and Release of any claim to attorney fees, costs and expenses arising out of [the Szczesny litigation]."

Approximately one month later, on August 5, 1988, counsel for Turner wrote to Moriarty. The letter stated in pertinent part:

> I advised you in our telephone conference of August 4, 1988, that Turner is of the unequivocal position that they [sic] are entitled to 50% of 40% of the recovery ... consistent with the written fee splitting agreement between yourself and his office....
>
> This letter is further notification of the position of Turner that the action taken by you is arbitrary and without basis, and that the amount due and owing to Turner under the written fee agreement is a liquidated amount easily calculable of $300,-000.00. There was no dispute and is no dispute with regard to the sums due and owing and Turner's status in conjunction with the case has remained constant throughout.
>
> Furthermore, the proposed accord and satisfaction is arbitrary and capricious and lacks consideration. Turner has the right to mitigate possible damages by cashing the check of $198,000.00 despite and without regard to the claimed accord and satisfaction.

The letter went on to say that Turner was demanding the balance of his fee, $102,-000.00, and he would take legal action if necessary to recover the amount. Turner cashed the check on August 5, 1988, the same day the letter was sent. He did not modify or alter the restrictive endorsements on either side of the check.

Turner then sued Moriarty, Hartford, and ICA for the remainder of his fee in the United States District Court for the Eastern District of Wisconsin. The three defendants moved for summary judgment. A magistrate judge recommended that the district court grant each motion. The court approved the recommendation. The court granted summary judgment for Moriarty on the ground of accord and satisfaction under Wisconsin law. The court granted summary judgment for ICA on the ground that the court lacked personal jurisdiction over the out-of-state insurance company. The court also granted summary judgment for Hartford on the ground that Turner had no enforceable lien or assignment against it, because Turner had failed to give Hartford (or ICA for that matter) notice of either. Turner timely appeals these rulings.

## II. Analysis

### A. Standard of Review

We review *de novo* a district court's grant of summary judgment. *Brookins v. Kolb,* 990 F.2d 308, 312 (7th Cir.1993). We view the facts and draw all reasonable inferences from those facts in favor of the nonmoving party. *Id.* "Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)). "Summary judgment is appropriate only in circumstances where 'the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "'The movant has the burden of showing that there is no genuine issue of fact, but ... [under Rule 56(e), the non-moving party] must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514). "'[T]here can be no genuine issue as to any material fact' where the party who bears the burden of proof fails to establish an essential element in its case." *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)).

### B. Accord and Satisfaction

The parties agree that Wisconsin law governs the accord and satisfaction issue.

Under Wisconsin law, "[a]n 'accord and satisfaction' is an agreement to discharge an existing disputed claim and constitutes a defense to an action to enforce a claim. An accord and satisfaction requires a bona fide dispute as to the total amount owing, an offer, an acceptance and consideration." *Butler v. Kocisko,* 166 Wis.2d 212, 479 N.W.2d 208, 210 (Ct.App.1991). The Wisconsin Supreme Court has defined three rules relevant to accord and satisfaction, only two of which are material to this case:

First, the law of Wisconsin has long been that payment in full settlement of a claim which is disputed as to amount discharges the entire claim. Resolution of an actual controversy involving some subject of pecuniary value and interest to the parties is sufficient consideration of an accord and satisfaction.

A second rule, also of longstanding, is that payment of part of a debt which is not disputed as to amount does not discharge the debt altogether, even when it is expressly agreed that the partial payment is received in full satisfaction. The debtor's mere refusal to pay the full claim does not make it a disputed claim. Where the refusal is arbitrary and the debtor knows it has no just basis, the payment of less than the full amount claimed does not operate as an accord and satisfaction even though it is tendered and received as such. This rule is based on the principle that a part payment furnishes no consideration for relinquishing the balance of the debt.

*Flambeau Prods. Corp. v. Honeywell Info. Sys.,* 116 Wis.2d 95, 341 N.W.2d 655, 664 (1984).

■ Moriarty contends that the first rule applies to this case. He argues that the contents of the July 1988 letter and accompanying check clearly showed that the fee amount was in dispute and that Turner had notice of the dispute. In contrast, Turner maintains that the second rule controls. He asserts that he and Moriarty had agreed to an even split of the proceeds and, conse-

quently, that no dispute existed. He argues that Moriarty's July 1988 letter represents an arbitrary attempt to create a dispute in order for Moriarty to keep a greater share of the settlement amount. We conclude that the present record does not demonstrate that there was accord and satisfaction between the parties under Wisconsin law. Thus, we reverse the district court's grant of summary judgment in favor of Moriarty.

Moriarty has not satisfied his burden of proof at the summary judgment stage, because he failed to show the existence of a bona fide dispute between himself and Turner. To that end, he did not demonstrate that the December 1985 fee split agreement between himself and Turner was no longer valid. He devoted only a brief statement on the matter, contending that the December 1985 agreement was terminated after he was dismissed from the case in August 1986. Yet, without more, we cannot say that he has shown that the agreement was permanently canceled. This is especially true because at oral argument, Turner contested the assertion that the December 1985 agreement was no longer viable. He pointed to a December 1986 letter from himself to Moriarty—written after Moriarty had been dismissed and reinstated—that dealt with the December 1985 agreement between the attorneys regarding the even division of fees.[3] We have found no indication in the record to show the permanent cancellation of the fee-splitting agreement. As such, we conclude that Moriarty has not demonstrated that the December 1985 agreement lacked force. Indeed, even in his July 1988 letter to Turner, Moriarty did not state that the agreement had been terminated.

We, therefore, agree with Turner that the second rule of *Flambeau Products Corp.* applies to this case. To repeat the rule,

payment of part of a debt which is not disputed as to amount does not discharge the debt altogether, even when it is expressly agreed that the partial payment is

---

**3.** The letter Turner pointed to refers to a December 3, *1986* agreement. We presume that the date is a typographical error and should be *1985.* We have not found a December 3, *1986* letter in the record, just the December 3, *1985* letter deal-

ing with the fee-splitting agreement between Turner and Moriarty. Moreover, according to one of Turner's affidavits, the letter in question confirms the fee agreement.

received in full satisfaction. The debtor's mere refusal to pay the full claim does not make it a disputed claim. Where the refusal is *arbitrary and the debtor knows it has no just basis,* the payment of less than the full amount claimed does not operate as an accord and satisfaction even though it is tendered and received as such.

*Flambeau Prods. Corp.,* 341 N.W.2d at 664 (emphasis added). We question whether the facts are unrefuted that Moriarty refused to pay Turner one-half of the contingency fee because he honestly believed that a bona fide dispute existed.

Moriarty contends that his July 1988 letter and accompanying check were sufficient to illustrate that a bona fide dispute existed regarding the amount of fees. In the letter, he claimed that the ethical guidelines of the American Bar Association ("ABA") and the State of Texas required him to split the fee based on the proportion of work Turner did in the case. A fair reading of the ethical rules, though, leads to a contrary conclusion, one that supports the division of fees evenly.

The relevant ABA Model Rule 1.5(e)(1) states: [4]

> (e) A division of fee between lawyers who are not in the same firm may be made only if:
>
> > (1) The division is in proportion to the services performed by each lawyer, *or, by written agreement with the client, each lawyer assumes joint responsibility for the representation....*

ABA Model Rules of Professional Conduct Rule 1.5(e) (emphasis added).

The relevant Texas Rule DR 2–107(A)(2) provides:

> (A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
>
> > ....
> >
> > (2) The division is made in proportion to the services performed and responsibility assumed by each, *or is made with a forwarding lawyer.*

Texas Rules of Professional Conduct Rule DR 2–107(A)(2) (emphasis added).

Although Turner discussed the text of these ethical rules in his Initial Brief, Moriarty omitted any discussion of them in his Answer Brief. Rather than defending his position at the time he wrote the July 1988 letter that a one-third, two-third split was justified based on the ABA and Texas Rules, Moriarty argued that the Wisconsin Rules of Professional Conduct support a fee division based on the proportion of work done. Wisconsin Rules of Professional Conduct Rule 20:13(1)(b) ("The division is made in proportion to the services performed and responsibility assumed by each."). This, however, appears to be an after-the-fact attempt to justify his action. Our focus is whether the refusal was arbitrary and without any just basis at the time it was made, not afterwards based on reasons different from those that governed the refusal to make full payment. *See Flambeau Prods. Corp.,* 341 N.W.2d at 664.

In his July 1988 letter to Turner, Moriarty did not mention the Wisconsin Rules as a reason for the one-third, two-third division of the fees. In addition, Moriarty has failed to point out on appeal that the Wisconsin Rules of Professional Conduct changed on January 1, 1988, which was before he wrote his July 1988 letter to Turner. The revised Wisconsin Rules provide, as do the ABA and Texas Rules, that fees should be split based either on the proportion of work done or on a written agreement. Wisconsin Rules of Professional Conduct Rule 20:1.5(e)(1). Moriarty also has not demonstrated which of the two versions of the Wisconsin Rules would apply to this case. Thus, we are hard-pressed to apply the Wisconsin Rules to support Moriarty's decision to give Turner only one-third of the contingency fee. *See* Wisconsin Rules of Professional Conduct Ch. 20, Preamble ("Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to

**4.** The ABA Model Rules of Professional Conduct replaced the ABA Model Code of Professional Responsibility in August 1983.

provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.").

In sum, based on our *de novo* review, we conclude that Moriarty has not shown the absence of a genuine issue of material fact and that he should prevail as a matter of law. Accordingly, we reverse the district court's grant of summary judgment in favor of Moriarty and remand for further proceedings consistent with this opinion.[5]

## C. Lien or Assignment

■ As Turner admitted at oral argument, the main combatants in this case are Moriarty and himself. The dispute over the fees is truly between them. Hartford and ICA are secondary players, who already met their obligation after paying the Texas state court the settlement amount of $1,500,000.00.

Turner's claim against Hartford and ICA is that the insurance companies violated his lien and/or assignment right to the settlement proceeds when they entered into the settlement agreement without his prior consent. As a result, he contends they are liable for the outstanding amount due to him.

To the extent Turner had a lien under Wisconsin law based on his initial agreement with Szczesny to receive a forty-percent contingency fee, sections 757.36 and 757.37 of the Wisconsin Statutes would govern. Section 757.36 states in part that "[a]ny person having or claiming a right of action ... may contract with any attorney ... and give the attorney a lien ... upon ... the proceeds ... derived in any action ... where such agreement is made and *notice thereof given to the opposite party* or his or her attorney...." Wis.Stat. § 757.36 (emphasis added). Section 757.37 states:

[I]f any such settlement of the cause of action is had or effected before judgment therein, then it shall only be necessary to enforce the lien to prove the agreement creating the same, *notice to the opposite*

*party* or his or her attorney and the amount for which the case was settled....

*Id.* § 757.37 (emphasis added).

■ These sections, read together, placed the obligation on Turner to have notified Hartford and ICA of the lien he had under Wisconsin law to the proceeds from Szczesny's lawsuit. *See Weigel v. Grimmett,* 173 Wis.2d 263, 496 N.W.2d 206, 208–09 (Ct.App. 1992). Turner admits that he failed to give actual notice. He claims, instead, that Hartford and ICA received constructive notice of the lien because they knew he was working on the case with Moriarty. As such, he contends they were put on inquiry notice, and, at the settlement hearing, they should have inquired about his lien. We disagree. Just because the insurance companies had notice that Turner was working on the case with Moriarty does not mean that they would have had any notice that he had a lien. For all the insurance companies knew, Turner was doing the case on a *pro bono* basis. *See Goldman v. Home Mut. Ins. Co.,* 22 Wis.2d 334, 126 N.W.2d 1, 4 (1964) ("A mere notice by the attorney that he has been retained by the claimant is not sufficient notice of 'such agreement' to inform the opposite party of the lien.") (discussing the previous version of section 757.36 that had substantially identical language).

■ The same reasoning applies to Turner's claim that the fee splitting agreement between himself and Moriarty gave him an assignment under Texas law to the settlement amount. As with Wisconsin law, Texas law required Turner to give Hartford and ICA notice of his assignment. *See, e.g., Wilson v. House,* 131 S.W.2d 995, 997 (Tex.Ct. App.1939). He did not do so.

■ We also reject Turner's final argument that he had an equitable lien under Wisconsin law to the settlement amount. The concept of an equitable lien is to prevent unjust enrichment. *See In re Richland Bldg. Sys., Inc.,* 40 B.R. 156, 157–58 (Bankr. W.D.Wis.1984). Neither Hartford nor ICA

---

5. We also note that in his July 1988 letter to Turner, Moriarty stated that the Texas state court had approved the one-third, two-third fee split. The settlement hearing transcript and the final judgment, however, do not support Moriarty's position. The Texas court passed no judgment on the fee-splitting arrangement.

was unjustly enriched in this case. Hartford and ICA paid the full settlement amount of $1,500,000.00 to the Texas court. Szczesny got sixty percent of that amount. Moriarty received forty percent of that amount to split with Turner. No matter the percentage Turner received from the forty percent, Hartford and ICA would not have been unjustly enriched, because they had already paid their required amount before any divisions of the settlement were made. Therefore, we affirm the district court's grant of summary judgment in favor of Hartford and ICA.[6]

### III. Conclusion

We AFFIRM the district court's grant of summary judgment with regard to Hartford and ICA, but we REVERSE the district court's grant of summary judgment with respect to Moriarty. The matter is REMANDED for further proceedings consistent with this opinion.

---

**6.** Although we affirm the district court regarding ICA on substantive grounds, we also agree with the court that it lacked personal jurisdiction over ICA. Based on the Wisconsin statute Turner relied on below, the lawsuit between Turner and ICA did not give rise to any injury to person or property within Wisconsin. Wis.Stat. § 801.-05(3). In addition, the connection between the actions of the ICA attorney regarding Szczesny's lawsuit (for example, participating in the deposition of her expert in Wisconsin) and Turner's claims in this action are not close enough to warrant personal jurisdiction over ICA.