**Fernando QVYJT, Plaintiff,**

v.

**Dr. Chhiu–Tsu LIN, Dr. Joe W. Vaughn, and Dr. Morley Russell, Defendants.**

No. 94 C 50398.

United States District Court, N.D. Illinois, Western Division.

Feb. 11, 1997.

Robert P. Nolan, Nolan & Herrmann, De-Kalb, IL, for Plaintiff.

Iain D. Johnston, Illinois Attorney General's Office, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

Plaintiff, Fernando Qvyjt, filed an amended three-count complaint pursuant to 42 U.S.C. § 1983 against defendants, Dr. Chhiu–Tsu Lin ("Dr. Lin"), Dr. Joe W. Vaughn ("Dr. Vaughn") and Dr. Morley Russell ("Dr. Russell"). At the time the basis for this action arose, plaintiff was a graduate student at Northern Illinois University ("NIU"), and defendants were faculty members of NIU's chemistry department. Count I alleges that defendants deprived plaintiff of his property right and liberty interest in obtaining an education at NIU without due process of law. Counts II and III allege that defendants retaliated against plaintiff for exercising his First Amendment right to free speech. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and venue is proper as all the alleged events occurred in this district and division. In a prior order, this court granted summary judgment in favor of defendants as to Count I. *See Qvyjt v. Lin*, 932 F.Supp. 1100 (N.D.Ill.1996). Pending before the court is defendants' renewed motion for summary judgment as to Counts II and III.[1]

Counts II and III are basically the same—the only difference is that Count II seeks injunctive relief and Count III seeks money damages. Both counts allege that defendants retaliated against plaintiff for accusing Dr. Lin of misappropriating plaintiff's research by (1) barring plaintiff from NIU's laboratory facilities, (2) barring plaintiff from using NIU's equipment and chemicals, (3) denigrating plaintiff's dissertation and (4) by demanding that plaintiff choose a completely new dissertation subject. Defendants contend the facts show that they did not retaliate against plaintiff for making the public accusations. They further contend that, with respect to Count III, they are entitled to qualified immunity, as it was not clearly established that professors at a public university violate a graduate student's First Amendment rights when they retaliate against the student for making public accusations of professional misconduct against a fellow professor.

The background facts to this case are set forth in detail in *Qvyjt*, 932 F.Supp. at 1103–05. Although the parties have filed new statements of fact pursuant to Local General Rules 12M and 12N in connection with defen-

---

**1.** Defendants moved in the alternative for this court to reconsider its prior ruling with respect to Counts II and III. That motion was denied in this court's order of September 20, 1996.

dants' renewed motion, the court need not engage in another factual discussion as before, as there are only a few core facts which, in the court's opinion, preclude summary judgment on both remaining counts. Briefly, they are as follows.

■ Plaintiff accused Dr. Lin of misappropriating plaintiff's research on or about November 6, 1993. Plaintiff claims that Dr. Lin barred him from using the laboratory on November 16, 1993.[2] Sometime later in either November or December 1993, plaintiff met with Dr. Vaughn, during which Dr. Vaughn informed plaintiff that he could not use Dr. Lin's laboratory given the fact that plaintiff and Dr. Lin could not work together any longer. No formal action was taken, however, to remove Dr. Lin as plaintiff's advisor and dissertation director at that time. In March 1994, plaintiff met with members of his dissertation committee. At the meeting, Dr. Russell and another member demanded that plaintiff write a report as a dissertation transcribe and include the contents of all his research notebooks. After the meeting, a third member informed plaintiff that it was not necessary for him to include the contents of all his research notebooks.[3] Based on that conversation, plaintiff did not include the contents of his research notebooks in his dissertation.

In July 1994, plaintiff's dissertation committee sent him a letter informing him that his dissertation was insufficient. The committee suggested that plaintiff sever his relationship with Dr. Lin and select a new, mutually acceptable doctoral project. The committee gave plaintiff the alternative of reworking his present dissertation to fulfill the requirements of a masters degree. It is not clear why the committee required plaintiff to choose a new dissertation topic in addition to selecting a new advisor. During July and August 1994, plaintiff asked that Dr. Lin be formally removed as his advisor

and dissertation director so that he could have a professor from another university who was experienced in the area of plaintiff's research act as his advisor. Plaintiff's dissertation committee, including Dr. Russell and Dr. Vaughn, refused plaintiff's repeated requests to allow the professor from the other university to become plaintiff's advisor, and they continued to insist that plaintiff begin a new dissertation topic. On November 16, 1994, Dr. Vaughn formally removed Dr. Lin as plaintiff's advisor, and plaintiff was given until February 1, 1995 to choose a new advisor. At this time, plaintiff was permitted to select a professor from another university. Plaintiff claims that he did not believe the committee would actually permit him to select an advisor from another university, as he had been requesting permission to do so for the four months preceding the November 1994 letter and had been told that he could not. Because plaintiff did not select a new advisor and he had not made any further progress towards his degree, he was terminated from the graduate program.

■ A retaliation claim can be established through indirect evidence by proving a chronology of events from which retaliation can be inferred. *See Murphy v. Lane,* 833 F.2d 106, 108 (7th Cir.1987). To ultimately prevail on his claim, plaintiff must show that impermissible retaliation was either the reason, or a substantial motivating factor, for the complained of acts. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Brookins v. Kolb,* 990 F.2d 308, 315 (7th Cir.1993); *Cornell v. Woods,* 69 F.3d 1383, 1387–88 (8th Cir.1995). Based on these facts, many of which are disputed, the court cannot conclude as a matter of law that defendants did not retaliate against plaintiff for accusing Dr. Lin of misconduct. Concurrently with the aforementioned events, three different committees were considering and

---

**2.** Dr. Lin disputes this, claiming that he did not have the authority to bar a student from his laboratory.

**3.** Defendants object to this fact on the grounds that it is inadmissible hearsay. Although plaintiff did not respond to this objection, the objection is not well taken. The statement, as offered,

is not offered for its truth, i.e., that it was not, in fact, necessary for plaintiff to include the contents of his notebooks. In the court's opinion, it is being offered to explain plaintiff's conduct. Moreover, to the extent it is being offered for its truth, the statement still would not be hearsay under Fed.R.Evid. 801(d)(2)(D).

investigating plaintiff's claims of misconduct. *See Qvyjt*, 932 F.Supp. at 1104–05. From November 1993 to at least July 1994, plaintiff was barred from using the laboratory, apparently without being given any option with respect to selecting a different advisor. Then, plaintiff's dissertation committee informed him that he must select a different advisor, and, for reasons which are unknown to the court, that he must also begin a new dissertation topic as well. Plaintiff requested to have an outside professor serve as his advisor, and for approximately four months, his requests were refused. Then, in November 1994, he was tossed a bone—he could select an outside professor, but he must still begin a new dissertation topic. Drawing all reasonable inferences in favor of plaintiff, as the court has just done, the court finds that plaintiff has presented evidence from which a reasonable trier of fact could find that defendants retaliated against plaintiff for his accusations of misconduct against Dr. Lin.

It has been assumed in the discussion thus far that plaintiff's accusations constituted a "protected expression" under the First Amendment. Defendants still contest whether such accusations were a protected expression, and it is upon this basis that they seek to raise the defense of qualified immunity. That is, they contend that plaintiff did not engage in a protected expression, and, even if he did, it was not clearly established that it was a protected expression at the time of defendants' conduct. The court shall resolve both contentions in its discussion of the qualified immunity defense.

 In considering the defense of qualified immunity, the court uses a two-step analysis: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir.1994). Once the defense is raised, the plaintiff bears the burden of establishing the existence of a clearly established right. *Id.* To demonstrate that a right is "clearly established," a plaintiff need not show that the very action in question was previously held unlawful, or that a prior case is "on all fours" with the case and the law in his or her own case.

*Forman v. Richmond Police Dep't*, 104 F.3d 950, 958 (7th Cir.1997). In fact, a plaintiff need not cite to any case at all if the constitutional violation is obvious. *Kernats*, 35 F.3d at 1176. In all but the obvious cases, however, it is usually necessary to cite to closely analogous cases, decided before the defendants acted or failed to act, delimiting the contours of the right with sufficient clarity such that a reasonable official would understand that what he is doing violates that right at the time of the incident. *Id.*

As to the first prong, the court has already found that plaintiff has presented evidence from which a reasonable trier of fact could conclude that defendants violated his First Amendment rights. That finding, however, was based on the assumption that plaintiff's accusations regarding Dr. Lin constituted a protected expression under the First Amendment. Defendants persist in arguing that plaintiff's complaints about Dr. Lin were not protected expressions under the First Amendment. This line of attack is based on arguments made in their prior motion for summary judgment—that the speech must be a matter of public concern in order for it to be protected, premised on *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). These arguments were rejected by this court in its opinion denying defendants' prior motion for summary judgment as to Counts II and III, *see Qvyjt*, 932 F.Supp. at 1109, and again in its opinion denying defendants' motion to reconsider, *see* Minute Order of September 20, 1996. The only aspect of their argument which may be new is their reliance on *Brookins v. Kolb*, 990 F.2d 308 (7th Cir.1993), a case involving an inmate's First Amendment claims. Defendants argue that the *Pickering* and *Connick* analysis applied in that case, thus supporting their contention that such analysis is not limited to government employer-employee relationships.

As this court has previously held in this case, the governmental interests present in a governmental employer-employee relationship, which led the Supreme Court to extend *Pickering* and *Connick* to other situations,

*see Board of County Comm'rs, Wabaunsee County v. Umbehr,* —— U.S. ——, ——, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996) (extending *Pickering* to a government-independent contractor relationship), are simply not present in the state university-student relationship before this court. *See Qvyjt,* 932 F.Supp. at 1108–09. Moreover, the driving force behind the Seventh Circuit limiting a prisoner's First Amendment rights in *Brookins* was the fact of the prisoner's incarceration. *See Brookins,* 990 F.2d at 312. Thus, *Brookins* adds nothing to this discussion. Defendants' arguments boil down to one key question—whether plaintiff's status as a graduate student, as opposed to an undergraduate or a secondary school student, removes this case from the panoply of cases involving a student's exercise of his or her First Amendment rights. This court holds now, as it has before, that it does not.

To find support for this conclusion, the court need not go any further than to consider *Papish v. Board of Curators of the Univ. of Missouri,* 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973) (per curiam). The plaintiff in that case was a graduate student (as opposed to a graduate student-employee) enrolled in the University of Missouri School of Journalism who was expelled for distributing on campus a newspaper containing forms of indecent speech. *Id.* at 667, 93 S.Ct. at 1197–98. In considering the plaintiffs claims, the Supreme Court applied the principles it previously established in student speech cases such as *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972) and *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The Court made it clear in *Papish* that a state university cannot punish a graduate student for the content of his or her speech. *See Papish* 410 U.S. at 670–71, 93 S.Ct. at 1199–1200. Application of the principles enumerated in *Pickering* did not enter into the Court's analysis, nor have the principles of *Pickering* and *Connick* ever been a part of the Court's analysis in student speech cases. Thus, whether the speech touches matters of private or public concern simply is not part of the proper analysis when considering a student's claim under the First Amendment.

Having concluded that plaintiff has rebutted the first prong of the qualified immunity defense, the court turns to the second prong—whether the constitutional standards were clearly established at the time defendants acted. Plaintiff cites to *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) for his argument that it is obviously a violation of the Constitution for a governmental body to retaliate against a person for exercising his or her First Amendment rights. In response to this argument, defendants contend that plaintiff improperly frames the issue too broadly, relying on *Mozzochi v. Borden,* 959 F.2d 1174, 1178–79 (2d Cir.1992). Framing the issue to be whether it is a violation of the First Amendment for university professors to retaliate against a graduate student for his complaining about private disputes with his professors, defendants contend that there is no case which even remotely reaches the required level of specificity.

■ For reasons already stated, *Tinker, Healy* and *Papish* provide for the rule of decision in this case, and these decisions were handed down by the Supreme Court over twenty years ago. Admittedly, this court has not found any case specifically addressing defendants' argument that a graduate student's First Amendment right to free expression is limited to matters of public concern. Defendants rely on *Kelleher v. Flawn,* 761 F.2d 1079 (5th Cir.1985) and *Siblerud v. Colorado State Bd. of Agric.,* 896 F.Supp. 1506 (D.Colo.1995), but as this court observed in its prior opinion in this case, neither decision is directly on point. In *Kelleher,* the plaintiff was an assistant instructor, in addition to being a graduate student, at the state university and was reassigned to a different teaching assignment allegedly in retaliation for expressing certain political opinions in the courses she taught. *Kelleher,* 761 F.2d at 1082–83. Thus, unlike here, the First Amendment issue in that case arose in the context of an employment relationship. As to *Siblerud,* not only is it distinguishable, *see Qvyjt* 932 F.Supp. at 1109, but it improperly applied First Amendment law. The court in *Siblerud,* without any rationale whatsoever, likened a graduate student-state

university relationship to a state employer-employee relationship. The state employer-employee relationship is not an appropriate analogy. *See Papish*, 410 U.S. at 670, 93 S.Ct. at 1199; *Qvyjt*, 932 F.Supp. at 1108–09. In the court's opinion, the absence of a reported case directly on point demonstrates nothing more than widespread compliance with the well-recognized constitutional principles of *Tinker, Healy, Papish* and the like. *See Eberhardt v. O'Malley* 17 F.3d 1023, 1028 (7th Cir.1994) (widespread compliance with well-recognized constitutional principles can account for lack of reported decisions). Thus, the court finds that it was clearly established by no later than 1973, when the Supreme Court decided *Papish*, that state university officials cannot retaliate or punish a graduate student for the content of his speech, regardless of whether that speech touches matters of public or private concern. Defendants' defense of qualified immunity, therefore, must fail. Accordingly, for the foregoing reasons, defendants' renewed motion for summary judgment is denied.