Charles WILSON, Plaintiff,

v.

Ken GREETAN, Individual Capacity;
and Jeffrey Stellings, Individual
Capacity,[1] Defendants.

No. 06–C–585–C.

United States District Court,
W.D. Wisconsin.

Aug. 17, 2007.

See also 2006 WL 5866676.

---

1. In his complaint, plaintiff identified this defendant as "Captain Stellings." Defendants have identified Stellings's full name in their motion for summary judgment and I have amended the caption accordingly.

Charles Wilson, Green Bay, WI, pro se.

Monica Burkert–Brist, Wisconsin Department of Justice, Madison, WI, for Defendants.

## OPINION AND ORDER

BARBARA B. CRABB, District Judge.

This case arises out of a conduct report that plaintiff Charles Wilson, a prisoner, received after a conversation with his work supervisor, defendant Ken Greetan, in November 2005. In the conduct report, Greetan accused plaintiff of asking Greetan to confirm a "rumor" about another

officer. Plaintiff says that Greetan fabricated the conduct report because plaintiff had called Greetan "corrupt" and threatened to report his misconduct to a higher ranking officer. Defendant Jeffrey Stellings, the officer who presided over plaintiff's disciplinary hearing, sided with defendant Greetan in part and sentenced plaintiff to 90 days of disciplinary separation.

Plaintiff is proceeding on claims that (1) defendant Greetan retaliated against him for exercising his right to free speech and to petition the government for redress of grievances and (2) defendant Stellings was complicit in Greetan's retaliation when he found plaintiff guilty. Defendants' motion for partial summary judgment is now before the court.

Conceding that there are genuine issues of material fact with respect to plaintiff's claim against defendant Greetan under the petition clause, defendants do not seek dismissal of the entire case. Instead, defendants argue that summary judgment should be granted with respect to plaintiff's claims against defendant Stellings because plaintiff has not adduced evidence that Stellings had a retaliatory motive in disciplining plaintiff. In addition, defendants seek dismissal of the free speech claim against Greetan on the ground that plaintiff's statement to Greetan was not a matter of "public concern."

I will grant defendants' motion in part and deny it in part. Because I agree with defendant that plaintiff has failed to adduce any evidence that defendant Stellings found petitioner guilty because plaintiff exercised a constitutional right, I will dismiss plaintiff's claims against Stellings. However, I disagree with defendants' argument that plaintiff's statement is not a matter of public concern. Allegations of corruption are inherently a matter of public concern and defendant has not shown that plaintiff's motive for calling Stellings corrupt

was purely personal. I will allow plaintiff to proceed to trial on his claims that defendant Greetan retaliated against him for exercising right to free speech and his right to petition for redress of grievances.

I make one observation before setting forth the proposed findings of fact. The sole piece of evidence on which defendants rely to support their motion for partial summary judgment is the affidavit of defendant Stellings. In that affidavit, Stellings testifies about the contents of a number of documents, including the conduct report, the disciplinary hearing decisions, plaintiff's grievances (and responses to them) and "institution records" showing plaintiff's place of incarceration. Despite relying heavily on these documents, defendants submitted none of them to the court. Instead, that task was left for plaintiff, who provided authenticated copies of most of them with his own affidavit.

■ Defendants' approach was a risky one. Parties may testify only about matters of which they have personal knowledge. Fed.R.Civ.P. 56(e); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir.2003). To the extent a witness relies on documents instead of his own observations, those documents must be offered as exhibits to allow the court to determine whether they are admissible as exceptions to the hearsay rule and to determine whether the witness's characterization of the document is accurate. This is also simply a matter of good practice, one that is obvious enough that a pro se party such as plaintiff had no difficulty following it. A party who fails to do this takes the risk that his proposed findings of fact will be disregarded as inadequately supported.

■ In this case, the error was harmless because plaintiff submitted the missing documents and defendants do not dispute the accuracy of plaintiff's copies. I

expect that counsel for defendants will be more diligent in the future.

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed.

## UNDISPUTED FACTS

### A. *Events Leading Up to the Conduct Report*

Plaintiff Charles Wilson is confined at the Green Bay Correctional Institution in Green Bay, Wisconsin. In November 2005, plaintiff was employed at the prison textile shop, where defendant Ken Greetan was a correctional officer and plaintiff's supervisor.

On November 15, 2005, after plaintiff was finished with work, he was talking to a prisoner co-worker while waiting to enter the recreation building. Plaintiff was commenting on defendant Greetan's practice of requiring them "to stand outside in the rain until recreation clears." Defendant Greetan, who was also outside the recreation building, had been listening to the conversation. As plaintiff walked by, Greetan told him, "Blame it on the white man." (The parties propose no facts regarding why Greetan made this comment.)

The following day, plaintiff and another prisoner were waiting outside the textile shop before work. When defendant Greetan came to unlock the door, he saw plaintiff standing in the same spot plaintiff always waited. As Greetan approached, he "bumped" plaintiff's shoulder with enough force that it caused plaintiff pain. Later, when plaintiff was walking through the shop metal detector, Greetan "was moving the inmate locker door back and forth, which made the metal detector buzz."

After plaintiff set up his work station, he approached defendant Greetan at his desk. Plaintiff told Greetan that he wanted to file an incident report because he believed that Greetan had bumped into him inten-

tionally. Plaintiff asked Greetan whether Captain Schultz was the appropriate person to contact because Greetan could not file an incident report against himself.

When Greetan asked plaintiff why he believed the act had been intentional, plaintiff pointed out the comment that Greetan had made the day before. Going into significantly more detail, plaintiff explained that he believed the comment was part of a larger problem:

> I didn't think nothing of it when you said ["Blame it on the white man,"] but when you bumped into me, I thought back to that comment which was very unprofessional; and you remember that speech you gave when you first started working in the shop? When you said you know we probably heard a lot of bad thing about you, and you were trying to put the past behind you and turn a new leaf. Well that person that you were trying to turn away from is back and when you gave that speech, I didn't know what you were talking about. I hadn't never seen or hear of you until you started working up here and then I started hearing all these things about you ... that you were a Sgt. and you were busted down for inciting race riots in the dorm and you were kicked out of the south cell hall for writing bogus conduct reports and ever since those white shirts came up here and went through your stuff you have been taking your anger out on us and we haven't done anything to you.

In response defendant Greetan told plaintiff, "If you contact Captain Schultz to file an incident report, I'm going to ... say you solicited me about staff." Plaintiff replied, "You're corrupt." (In their response to plaintiff's proposed findings of fact, defendants dispute plaintiff's version of his interactions with defendant Greetan on November 15 and 16. However, be-

cause they failed to state their version of the facts or provide a citation to the record, I have treated plaintiff's proposed facts as undisputed for the purpose of defendants' motion. *Procedures to Be Followed on Motion for Summary Judgment*, II.C., II.D.2, III.B., attached to Preliminary Pretrial Conference Order, Feb. 8, 2007, dkt. # 9.)

After this exchange, plaintiff went back to work. Fifteen minutes later, two officers and a "white shirt" placed plaintiff in temporary lock up as the result of a conduct report defendant Greetan issued to plaintiff for disobeying orders, soliciting staff and violating institutional policies and procedures. In the conduct report, defendant Greetan said that he had bumped into plaintiff accidentally and that plaintiff had offered to "forget" the incident report if Greetan would tell plaintiff "if the rumor is true about Capt. Schultz."

## B. *Disciplinary Hearings before Defendant Stellings*

On November 22, 2005, plaintiff received a hearing on the conduct report before defendant Jeffrey Stellings. Plaintiff told Stellings that defendant Greetan had bumped into him intentionally, that plaintiff had wanted to file an incident report so that there was "something on file" and that the conduct report was false. (The parties dispute what else plaintiff said at the hearing, but the disputes are not material. According to defendants, plaintiff said that he did not know Captain Schultz and had not made any comments about him. According to plaintiff, he explained why he believed Greetan's bumping into him was not an accident.)

Defendant Stellings found petitioner guilty of violating institution policies and procedures but not guilty of solicitation and disobeying orders. In his written decision, Stellings said that defendant Greetan was credible because Greetan had "no vested interest in the outcome of the hear-

ing." In finding plaintiff guilty of violating prison policies and procedures, Stellings wrote that "the inmate did solicit information about another staff member" and that possessing personal knowledge about staff is prohibited by the prison's "Living Rules." However, Stellings concluded that "this does not constitute solicitation" under the disciplinary code. In addition, Stellings concluded that the conduct alleged by defendant Greetan did not constitute disobeying orders. Stellings gave plaintiff a sentence of 90 days of disciplinary separation.

Plaintiff challenged this decision through the prison grievance system. The corrections complaint examiner sided with plaintiff, concluding that plaintiff was not guilty of violating prison rules because there was no evidence that he had actually "possessed" personal information about staff. At most, he had attempted to do so, but that was not the charge for which he was found guilty. The examiner ordered a new hearing.

Plaintiff received a new hearing before respondent Stellings on May 8, 2006. In his written decision, Stellings said that there was "no reason for the officer to [not be] truthful that the inmate did attempt to solicite [sic] information from staff concerning another staff member." He found plaintiff guilty of solicitation under Wis. Admin. Code § DOC 303.26(2). (By this time, plaintiff had already completed the 90 days of disciplinary separation so Stellings sentenced him to time served.)

Plaintiff filed an appeal of the decision on numerous grounds. Upon reviewing the appeal, the warden noted that defendant Stellings had failed to consider in his written decision a witness statement provided by another prisoner. The warden returned the case to Stellings to "correct [the] record." On June 4, 2006, Stellings issued a "corrected" decision in which he

added that he had considered the witness statement, but that it was "not notarized and filled with inconsistancies [sic] from the statement of Inmate Wilson."

## OPINION

### A. *Retaliation by Defendant Stellings*

■ The first question raised by defendants' motion for partial summary judgment is whether plaintiff has adduced enough evidence against defendant Jeffrey Stellings to keep Stellings in the case. In cases like this one brought under 42 U.S.C. § 1983, the plaintiff must show that each defendant was "personally involved" in the constitutional violation. *Morfin v. City of East Chicago,* 349 F.3d 989, 1001 (7th Cir.2003). Personal involvement includes "approving" the unconstitutional conduct of others. *Id.* This suggests that a hearing officer could be held liable under § 1983 for upholding a conduct report that was issued in retaliation for the exercise of a constitutional right.

■ There is an important limitation on this theory of liability: the official "approving" the unconstitutional conduct must know of the facts that make the conduct unconstitutional. *Luck v. Rovenstine,* 168 F.3d 323, 327 (7th Cir.1999) (official must have "actual knowledge" of constitutional violation to be held liable under § 1983). In the context of this case, this limitation means that defendant Stellings may not be held liable for approving defendant Greetan's alleged retaliation unless Stellings actually knew that Greetan was retaliating against plaintiff. In other words, plaintiff must show that defendant Stellings *believed* defendant Greetan had issued the conduct report, not for the reasons stated in the report, but because defendant had called Greetan corrupt and threatened to file an incident report against him.

■ Plaintiff says that defendant Stellings did know that defendant Greetan was retaliating against him because plaintiff told Stellings during the disciplinary hearing that Greetan had filed a false conduct report to prevent him from filing an incident report. But plaintiff is missing an important distinction. Knowledge of plaintiff's *allegation* of retaliation is not the same thing as knowing that Greetan was lying about his reasons for the conduct report. Presumably, defendant Stellings must make credibility determinations frequently in his capacity as a hearing officer. He is not required to believe the prisoner in every instance or face liability for violating the prisoner's constitutional rights. *Cf. Riccardo v. Rausch,* 375 F.3d 521, 525 (7th Cir.2004) (prison official "may be responsible without being credulous"). Rather, plaintiff must show that Stellings did not honestly believe that the conduct report was valid, but he decided to find plaintiff guilty of it anyway.

■ Plaintiff has not adduced any evidence that defendant Stellings found plaintiff guilty out of a desire to further any retaliation that may have been initiated by defendant Greetan. Plaintiff has not pointed to any evidence that Stellings made any suspicious comments during the hearing, that Stellings had any particular motivation to retaliate against plaintiff or even that Stellings had a reason to be biased in favor of Greetan.

■ It is true that the disciplinary proceedings had a number of procedural irregularities. For example, defendant Stellings first found that plaintiff had not violated the rule against solicitation and then changed his mind when the corrections complaint examiner reversed the charge for which Stellings had found plaintiff guilty. But this is not suggestive of a retaliatory motive on the part of Stellings. Requesting personal information about a staff member *is* solicitation under the disciplinary code. Wis. Admin. Code § DOC 303.26(2). Thus, Stellings's failure to find

plaintiff guilty of this rule after the first hearing indicates at most that Stellings was not as familiar with the disciplinary rules as he should have been. It does not suggest that Stellings knew there was no basis for the conduct report or that he believed Greetan was lying about the reason for the report.

Plaintiff all but concedes that there is no evidence of retaliation by repeatedly making the argument that the problem with Stellings's decision was not that Stellings had a retaliatory motive but that he failed to conduct a "full investigation" before making the decision. In other words, plaintiff believes that Stellings did not know enough to determine whether the conduct report was false and should have considered more evidence.

 Unfortunately for plaintiff, defendant Stellings did not have a constitutional obligation to consider all of the evidence that plaintiff wanted him to consider. To begin with, as I concluded in the screening order, Stellings was not required under the Constitution to consider *any* evidence because the discipline plaintiff received (90 days of disciplinary separation) was not severe enough to constitute a deprivation of liberty within the meaning of the due process clause. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir.2005). Plaintiff cites a number of state regulations that he believes Stellings violated by failing to adequately investigate plaintiff's allegations, but these have little relevance to plaintiff's claim in this court. Plaintiff is proceeding on a claim that defendants retaliated against him for exercising a constitutional right, not a claim that defendants failed to follow the disciplinary code. To the extent plaintiff wished to assert such a claim, he was required to do so in state court by filing a writ of certiorari. *Outagamie*

*County v. Smith*, 38 Wis.2d 24, 34, 155 N.W.2d 639, 645 (1968) (with respect to laws that are not made enforceable by statute expressly, action is reviewable only by certiorari).

In his brief and in his responses to defendants' proposed findings of fact, plaintiff says that defendant Stellings "knew or should have known" that defendant Greetan had a long history of disciplinary problems, including filing false conduct reports against prisoners. This argument has several problems. Again, it does not matter whether Stellings "should have known" that Greetan was retaliating against plaintiff. If Stellings did not have actual knowledge of the constitutional violation, he cannot be held liable under § 1983.

 Plaintiff cites no evidence that defendant Stellings actually knew that defendant Greetan had filed false conduct reports in the past. In fact, plaintiff cites no evidence that Greetan *had* filed false conduct reports. Plaintiff complains that defendants denied his requests for Greetan's disciplinary records during discovery. However, if plaintiff believed that defendants were wrongfully withholding evidence, plaintiff's remedy was to file a motion to compel under Fed.R.Civ.P. 37(a). Having failed to do that, plaintiff cannot now seek to defeat defendants' motion for partial summary judgment by asking the court to speculate about what Greetan did or did not do and what Stellings did or did not know about it. *Davis v. Carter*, 452 F.3d 686, 697 (7th Cir.2006) ("[W]hen the evidence [from the non-moving party] provides for only speculation or guessing, summary judgment is appropriate.").

Defendants' motion for partially summary judgment will be granted with respect to plaintiff's claims against defendant Stellings and plaintiff's complaint will be dismissed as to that defendant.

B. *Free Speech Claim: Public Concern*

■ Plaintiff's free speech claim is that defendant Greetan retaliated against him for telling Greetan, "You're corrupt." As both sides recognize, the threshold question for this claim is whether plaintiff's speech touched on a matter of public concern. *McElroy v. Lopac*, 403 F.3d 855 (7th Cir.2005). Defendants argue that the answer to this question is no. (In the context of this argument, defendants lay out their view of the evidentiary framework for First Amendment retaliation claims, citing *Rasche v. Village of Beecher*, 336 F.3d 588, 597 (7th Cir.2003). Although it is not necessary to discuss the proper framework to decide defendants' motion, defendants should know for the purpose of trial that the standard used in *Rasche* was overruled in *Spiegla v. Hull*, 371 F.3d 928 (7th Cir.2004).)

■ A "public concern" is essentially what it sounds like: the statement must be of some interest or significance to the "public" rather than a "personal grievance" of the speaker. *Miller v. Jones*, 444 F.3d 929, 935 (7th Cir.2006). However, in the context of a prison, the "public" includes other prisoners, so that a statement may be a matter of public concern even if non-prisoners might not be interested in the matter. *Pearson v. Welborn*, 471 F.3d 732, 740–41 (7th Cir.2006) (concluding that statement was matter of public concern when it related to concern of "all ... prisoners" in plaintiff's section of prison).

■ As I noted in the screening order and defendants now concede, an allegation of corruption generally would meet the "public concern" test. *Spiegla*, 371 F.3d at 937 ("our cases have consistently held that speech alleging government corruption and malfeasance is of public concern in its substance"). But defendants say that the *context* of plaintiff's comment shows that it was only a personal grievance because plaintiff did not make it as part of an attempt to file a complaint against defendant Greetan or otherwise "blow the whistle" on him. Rather, plaintiff was angry with Greetan for bumping into him. Although plaintiff called Greetan "corrupt," plaintiff could have just as easily called him a "creep" or a "rat." Dfts.' Br., dkt. # 11 at 11–12; Dfts.' Reply, dkt. # 18 at 4.

■ The obvious response to this is that plaintiff *didn't* call defendant Greetan a "creep" or a "rat"; instead, he accused Greetan of official misconduct. This is much more than a semantic distinction. If plaintiff had expressed his displeasure with Greetan simply by calling him a disrespectful name, it would not be protected speech in the prison setting, regardless of its motive. *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir.1986) (upholding under First Amendment challenge prison policy that prohibited prisoners from using speech that was "disrespectful to any employee of the institution").

■ In any event, it is an unfair characterization of plaintiff's comment to say that he was simply mounting a personal attack on defendant Greetan because Greetan had "bumped" him. Plaintiff says he called Greetan corrupt not because of their earlier altercation but in response to Greetan's threat to issue a false conduct report. Even when only a single prisoner is involved, it would seem obvious that any comment on such a serious abuse of power would be a matter of public concern. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 926 (9th Cir.2004) ("[W]e have held that when government employees speak about corruption, wrongdoing [or] misconduct ... their speech is inherently a matter of public concern.") (internal quotations omitted); *Azzaro v. County of Allegheny*, 110 F.3d 968, 981 (3d Cir.1997) (allegation of sexual harassment of one person matter of public concern). *Cf. Connick v. Myers*, 461 U.S. 138, 148 n. 8, 103

S.Ct. 1684, 75 L.Ed.2d 708 (1983) (noting that racial discrimination is matter inherently of public concern).

Further, I agree with defendants that plaintiff's comment must be viewed in context, but that context includes the statements plaintiff says he made before calling Greetan corrupt, statements defendants ignore in their briefs. According to plaintiff, the accusation of corruption was simply the conclusion of a much longer monologue about plaintiff's perception that Greetan was unfair to all prisoners. In particular, plaintiff told Greetan that he had an acknowledged history of misconduct, which included racial hostility. Plaintiff feared that Greetan's slight of him was indicative of a much bigger problem of Greetan's returning to his "corrupt" roots. This only further supports a conclusion that plaintiff was motivated by more than just a personal dislike of Greetan.

■ To be sure, the "bumping" incident provided the immediate trigger for plaintiff's confrontation of defendant Greetan. But a speaker's motivations need not be entirely selfless to merit First Amendment protection. As the court of appeals has recognized, many people who speak out on a matter of public concern are motivated at least in part by personal reasons. *Breuer v. Hart*, 909 F.2d 1035, 1039 (7th Cir.1990) ("Wrongdoing may often be revealed to the proper authorities only by those who have some personal stake in exposing wrongdoing.")

■ Further, the court has concluded in a number of cases that the speaker was protected by the First Amendment despite clear indications that he had mixed motives for his speech. *E.g., Cygan v. Wisconsin Dept. of Corrections*, 388 F.3d 1092, 1100 (7th Cir.2004) (although disgruntled prison guard's speech may have been motivated by dissatisfaction and concerns for personal safety, speech touched on issues of internal prison security and was "un-

doubtedly a matter of public concern"); *Marshall v. Porter County Plan Commission*, 32 F.3d 1215, 1218 (7th Cir.1994) (noting plaintiff's personal conflict with supervisor he criticized); *Breuer*, 909 F.2d at 1038 (plaintiff "was motivated at each step of his personal crusade by self-interest"); *Ohse v. Hughes*, 816 F.2d 1144, 1146 (7th Cir.1987) (recognizing that conflict may have begun because of dispute about promotion); *see also Thomas v. Ragland*, 324 F.Supp.2d 950, 970 (W.D.Wis.2004) (concluding that plaintiff's speech was protected as matter of public concern despite possible personal motivations). In fact, in *Spiegla*, 371 F.3d at 939, the court expressly admonished the district court for "improperly elevat[ing] motivation to a litmus test and thereby undervalu[ing] the important content of [the plaintiff's] speech." In this case, I cannot conclude that plaintiff's sole motive was to further a purely private interest.

The one aspect of plaintiff's speech that gives me pause is that his statement was made directly to Greetan rather than in a complaint or, as defendants say, as part of an attempt to "blow the whistle" on Greetan. Of course, there is some surface tension in finding a "private" statement such as plaintiff's to be protected under a doctrine that applies to matters of "public" concern. Part of the reason the Supreme Court has insisted on protecting speech on matters of public concern is that "free and open debate is vital to informed decision-making by the electorate." *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563, 571–72, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Obviously, a private statement can add little to the public discourse.

However, in cases decided after *Pickering*, the Court has made it clear that a statement need not be made *in* public to

be a matter of public concern. In *Givhan v. Western Line Consol. School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), the plaintiff was a school teacher who had been fired after she privately complained to the principal that she believed the school's policies were racially discriminatory. The Court of Appeals for the Fifth Circuit had "concluded that because petitioner had privately expressed her complaints and opinions to the principal, her expression was not protected under the First Amendment." *Id.* at 413, 99 S.Ct. 693. In a unanimous decision, the Supreme Court reversed, holding that free speech protection "extends to private as well as public expression." *Id.* at 415–16, 99 S.Ct. 693. The Court has reiterated this sentiment on a number of occasions, most recently in *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 1959, 164 L.Ed.2d 689 (2006), in which the Court stated that it was "not dispositive" that the plaintiff "had expressed his views inside his office, rather than publicly." *See also Connick,* 461 U.S. at 148, 103 S.Ct. 1684 ("right to protest racial discrimination—a matter inherently of public concern—is not forfeited by her choice of a private forum"); *Rankin v. McPherson,* 483 U.S. 378, 387 n. 11, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) ("The private nature of the statement does not ... vitiate the status of the statement as addressing a matter of public concern.").

Following the Supreme Court's lead, the Court of Appeals for the Seventh Circuit has held repeatedly that it is the *content* of the speech that is most important in determining whether a statement is a matter of public concern. *Sun v. Board of Trustees of University of Ill.,* 473 F.3d 799, 815 (7th Cir.2007); *Wernsing v. Thompson,* 423 F.3d 732, 751 (7th Cir.2005); *Gustafson v. Jones,* 290 F.3d 895, 906–07 (7th Cir.2002). In fact, defendants have cited no decision in which the court concluded that the private setting of speech rendered unprotect-

ed what would otherwise be speech on a matter of public concern. Quite the contrary, the court has been dismissive of any arguments that speech made privately to a supervisor cannot be protected. *E.g., Delgado v. Jones,* 282 F.3d 511, 518 (7th Cir. 2002) (concluding without further discussion that "fact that Delgado communicated privately with his superiors does not make his speech less a matter of public concern"); *Campbell v. Towse,* 99 F.3d 820, 827 (7th Cir.1996) (speech does not lose First Amendment protection because plaintiff "made his views known in a private rather than public setting, and even expressed dismay that some of his remarks had been released to the local press").

These cases recognize that the question in retaliation cases is not limited to whether the plaintiff's speech is somehow advancing public debate. Rather, free speech values may be undermined if public officials are able to penalize a citizen for no other reason than that he expressed a particular type of opinion, even if he expressed that opinion in private. The focus is on the act of the expression, not how loudly it is made.

This is not to say that the private nature of speech is irrelevant to a First Amendment analysis. If a statement is made in private, this could be evidence that the speaker was motivated to speak by a personal interest rather than a public concern. However, as I have noted above, if I accept plaintiff's version of events (as I must for the purpose of summary judgment because he is the non-moving party), it is reasonable to infer from the context of plaintiff's comment that he was expressing his perception that defendant Greetan mistreated prisoners generally.

Also, a statement criticizing a supervisor and made directly to him could

implicate security concerns in the context of a prison, which could provide grounds for finding that the First Amendment was not violated. *Cf. Givhan,* 439 U.S. at 415, 99 S.Ct. 693 ("When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered."). Presumably, these issues would be addressed by applying the test from *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), which is whether the censorship of speech is reasonably related to a legitimate penological interest, such as security. Because defendants have not advanced an argument that disciplining plaintiff for his speech would be justified under *Turner,* I need not address that issue. (It would be difficult for defendants to make such an argument because plaintiff was disciplined not for calling defendant Greetan corrupt but for trying to obtain personal information about a staff member.)

█ To the extent it may be appropriate to emphasize the private nature of the speech in some cases, this is not such a case. "Blowing the whistle" on defendant Greetan is exactly what plaintiff said he wanted to do once he got the chance, but he was prevented from doing so because Greetan issued the conduct report almost immediately after plaintiff's conversation with him. As I noted in the screening order, it would be ironic to say the least if a prison official could avoid liability by retaliating so swiftly that the prisoner was unable make his complaint public. Thus, for the purpose of this case, I need not decide whether there are some circumstances in which a statement might be unprotected because it is private. I conclude only that private speech does not lose First Amendment protection when the speaker is prevented from making his speech public by preemptive retaliation.

Finally, defendants' attempt to compare plaintiff's speech in this case to the speech of the prisoner in *Brookins v. Kolb,* 990 F.2d 308 (7th Cir.1993), is not persuasive. The speech at issue in *Brookins* was a letter in which a prisoner who was a jailhouse lawyer requested the use of a lie detector test to determine whether another prisoner was guilty of a conduct report. Although in *Brookins* the court held that the prisoner's speech was not protected, unlike this case, *Brookins* did not involve a prisoner's allegation of officer misconduct, but only an unusual attempt to influence the disciplinary proceedings of an individual prisoner. I do not find *Brookins* to be instructive.

Accordingly, I conclude that plaintiff's statement, "You're corrupt," to defendant Greetan was a matter of public concern. *Miller,* 444 F.3d at 935 (court rather than jury determines whether statement touches matter of public concern). Defendants' motion for partial summary judgment will be denied with respect to plaintiff's free speech claim against defendant Greetan.

ORDER

IT IS ORDERED that

1. The motion for partial summary judgment filed by defendants Ken Greetan and Jeffrey Stellings is GRANTED with respect to plaintiff Charles Wilson's claim against defendant Stellings. Plaintiff's complaint is DISMISSED as to Stellings.

2. Defendants' motion is DENIED with respect to plaintiff's claim that defendant Greetan retaliated against plaintiff for exercising his right to free speech.